DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Plaintiff Alvin W. Lasher has appealed from a judgment of the Akron Municipal Court that awarded him $500 in damages against defendant Thomas F. Haskins. He has argued that the trial court's damage award was against the manifest weight of the evidence. Specifically, he has asserted that he was entitled to recover $960 from defendant. This Court affirms the judgment of the trial court because it was not so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.
 I.
Plaintiff and defendant are both attorneys who practice law in Akron. At some time during 1994, defendant hired plaintiff to assist him on a matter having to do with registered land. Apparently, defendant was satisfied with the services provided by plaintiff in that matter. When asked by the trial judge at trial what the fee arrangement had been for that matter, plaintiff responded that he had done the work and submitted a bill, and defendant had paid him. He further testified that he believed his hourly rate at the time of the first matter on which he had assisted defendant had been $80. No evidence of the amount of time plaintiff had spent on that matter or the total amount of defendant's payment to him for it was submitted to the trial court.
During February 1995, defendant again requested plaintiff to assist him on a matter he was handling for a client. The client was a title company that had been named a third party defendant in a matter pending in the Tuscarawas County Common Pleas Court. A neighbor had sued a property owner for which the title company had provided title insurance, claiming that the neighbor had an easement for utilities under the insured's house. The insured filed a third party complaint against the title company, alleging that the title company was responsible for any damages the insured suffered as a result of the alleged easement. Defendant contacted plaintiff and asked him to assist on the case. Specifically, he told plaintiff that the title company's insured had a driveway and utility easement on another neighbor's property and asked plaintiff to determine whether the utilities for the neighbor who had sued the insured could be placed in that easement. Apparently, a premise of defendant's request to plaintiff was that, at the time the driveway and utilities easement was created for the insured's property, that property and the property owned by the neighbor who had sued the insured were both part of the same parcel. Plaintiff performed legal research related to the question presented by defendant. In addition, he checked the history of the three parcels at issue and discovered that the property owned by the insured and by the neighbor who had sued the insured had already been divided at the time the driveway and utility easement on the neighboring property was established for the insured's benefit.
On September 28, 1995, plaintiff submitted a one-page memorandum to defendant in which he listed seven cases that dealt with the legal question defendant had originally asked him to research. Plaintiff then informed defendant of his discovery regarding the time when the driveway and utility easement on the neighbor's property was established:
 However, I have discovered a problem in your plan I think you ought to know about. The easement in question was first created in the deed to our insureds, Albert C. Violet E. Harris in 1989, and at that time the Grantor decedent did not own the rear parcel now owned by Plaintiff. In fact, they never owned the rear parcel. It was conveyed out by the one time owner of everything, Morris Baker, in 1958. * * * This means that the easement could not be appurtenant to the rear parcel or used for its benefit.
Defendant apparently did not respond to plaintiff's memorandum in any way. On May 1, 1996, plaintiff sent defendant an invoice for $960. That amount represented 12 hours of plaintiff's time between February 15, 1995, and September 28, 1995, at $80 per hour. In the accompanying cover letter, plaintiff wrote:
 During the past 3 or 4 months I have made several inquiries of your secretary and left several requests with her to have you call me regarding the status of the above referenced case and whether any further help is needed from me on it. To date I have had no response from you.
 I believe I have done about everything I can do for you in this matter and I really need payment for the time I have on it. I am therefore enclosing my statement for services rendered to date and request that you advance me this amount now. If you do want further help from me on the case later on, I will, of course, be glad to give it.
Defendant failed to pay plaintiff's invoice.
On February 26, 1997, plaintiff brought this action against defendant in the Small Claims Division of the Akron Municipal Court. A trial to the court was conducted on June 4, 1997. On June 13, 1997, the trial court entered judgment for plaintiff for $500. Plaintiff timely appealed to this Court.
 II.
Plaintiff's assignment of error is that the trial court's damage award was against the manifest weight of the evidence. Specifically, he has argued that he was entitled to recover $960, the full amount of his May 1, 1996, invoice to defendant.
In its Judgment Entry, the trial court wrote that there was no doubt that defendant had engaged plaintiff to do legal research or that he had done that research and submitted a bill. It further wrote, however, that there had been "no testimony as to specifics of the fee agreement." Accordingly, based upon its review of the memorandum submitted by plaintiff and his itemized bill, it concluded that he was entitled to recover $500 based upon quantum meruit.
In determining that quantum meruit applied in this case, the trial court cited two cases, Reid, Johnson, Downes, Andrachik Webster v. Lansberry (1994), 68 Ohio St.3d 570, and Fox Associates Co., L.P.N. v. Purdon (1989), 44 Ohio St.3d 69, in which clients who had retained attorneys on a contingent fee basis had discharged those attorneys before the matters they were retained to handle were completed. In both cases, the Ohio Supreme Court held that the discharged attorneys were entitled to recover from their former clients based upon quantum meruit.
Plaintiff has argued that the cases relied upon by the trial court had no application to this case:
 The court cited and quoted from two cases which hold that when an attorney takes a case on a contingent fee agreement and is discharged by his client before the case is completed, he is only entitled to recover the reasonable value of his services prior to discharge, not the amount he would have received pursuant to the agreement. But there was no evidence before the court that there was a contingent fee arrangement between [plaintiff] and [defendant] or that [defendant] ever discharged [plaintiff].
Plaintiff is correct that there was no evidence of a contingent fee agreement between him and defendant. He is also correct that there was no evidence of defendant having discharged him, although defendant had not asked him to do any additional work on the Tuscarawas County matter from the time he submitted his memorandum on September 28, 1995, through the time he submitted his invoice on May 1, 1996. Those distinctions between this case and the cases relied upon by the trial court, however, do not mean that its award of $500 to plaintiff based upon quantum meruit was against the manifest weight of the evidence.
The trial court wrote in its Judgment Entry that "[t]here was no testimony as to specifics of the fee agreement." There were only two pieces of evidence before the trial court that related to the terms of the agreement between plaintiff and defendant regarding compensation. The first was plaintiff's testimony in response to questioning by the trial court about the "arrangements" between plaintiff and defendant. The court asked what the fee arrangement had been when plaintiff had done his first project for defendant, which would have been research related to registered land during 1994. Plaintiff responded: "Well, I did the work for him and when I was done, I submitted a bill, and he paid me." When the court asked how much he had charged defendant, plaintiff responded: "At that point, I think my hourly rate was $80 an hour. It was in this case here."
The second piece of evidence related to the terms between plaintiff and defendant consisted of three invoices. The first was the invoice for 12 hours at an hourly rate of $80 plaintiff had sent defendant for the matter at issue in this case. The others were one dated April 26, 1995, for 40 minutes at an hourly rate of $80 and one dated May 31, 1995, for 1 hour and 15 minutes at an hourly rate of $80. These invoices apparently related to two matters on which plaintiff assisted defendant during April 1995. Defendant paid both the April 26, 1995, and the May 31, 1995, invoices.
A court of appeals may reverse a judgment as being against the manifest weight of the evidence only if it is convinced that justice has not been afforded the complaining party:
 [A] reviewing court can reverse a judgment upon an assignment of error involving the weight of the evidence only when the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice, and * * * such a court is not authorized to reverse on such ground unless it is justified in inserting in its journal entry that substantial justice has not been done to the complaining party.
Royer v. Bd. Of Education (1977), 51 Ohio App.2d 17, 20, quotingJacobs v. Benedict (1973), 39 Ohio App.2d 141, 144. There was some evidence before the trial court that defendant had agreed to pay plaintiff $80 per hour. The trial court's finding that it could not determine the specifics of the fee agreement between the parties from the evidence before it, however, was not so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.
Inasmuch as the trial court could not determine the fee agreement between the parties based upon the evidence before it, it correctly determined that plaintiff was entitled to recover a reasonable fee for the services he provided:
 If A telephones a plumber to come to A's house to fix a broken pipe, it may be inferred that A has agreed to pay the plumber a reasonable fee for his services although nothing is said of this.
* * *
 When parties fail to mention a material term, often the reasonable conclusion is that they intended that the term be supplied by implication. Thus, if A and B agree that A will perform a service for B and no mention is made of price, it will be [inferred] that the parties intended that a reasonable price should be paid and received.
J. Calamari J. Perillo, Contracts (1970), § 10, 10, and § 23, 30. See, also, Bolton v. Marshall (1950), 153 Ohio St. 250, 256. The trial court wrote that, in determining what would be a reasonable fee for the services plaintiff provided defendant, the following factors listed by the Ohio Supreme Court in Reid, Johnson, Downes,Andrachik Webster v. Lansberry (1994), 68 Ohio St.3d 570, 576, were relevant:
 (1) the number of hours worked by the attorney before the discharge;
(2) the recovery sought by the attorney;
(3) the skills demanded by the case in question;
(4) the results obtained by the attorney; and
(5) the attorney-client agreement itself.
Judgment Entry at 2. It also wrote that it had considered the itemized bill and the "product" submitted to defendant by plaintiff.
Having reviewed the evidence submitted to the trial court, this Court is not convinced that the trial court's determination that $500 was a reasonable fee for the services performed by plaintiff for defendant denied plaintiff substantial justice. The trial court's judgment was not against the manifest weight of the evidence. Accordingly, plaintiff's assignment of error is overruled.
 III.
Plaintiff's assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit, Akron Municipal Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _________________________________ CLAIR E. DICKINSON, FOR THE COURT
BAIRD, J.
QUILLIN, P. J., CONCUR