**SHAPIRO, Appellant,**

v.

**ATTORNEY GENERAL OF OHIO, Appellee.**

[Cite as *Shapiro v. Ohio Atty. Gen.* (1997), 124 Ohio App.3d 476.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97API05–652.

Decided Dec. 2, 1997.

*Joel Shapiro,* pro se.

*Betty D. Montgomery,* Attorney General, and *William C. Becker,* Assistant Attorney General, for appellee.

PEGGY BRYANT, Judge.

Plaintiff-appellant, Joel Shapiro, appeals from a judgment of the Ohio Court of Claims finding in favor of defendant-appellee, Attorney General of the state of Ohio, on plaintiff's breach of contract claim. Plaintiff assigns a single error:

"The judgment of the trial court in the within cause is against the manifest weight of the evidence as reflected in the trial court's decision and judgment entry filed April 14, 1997."

Because the trial court incorrectly applied the terms of plaintiff's contract with defendant to the facts of this case, we reverse.

On November 2, 1995, plaintiff filed a complaint against defendant, which he later amended to contend that he served defendant as special counsel pursuant to an agreement effective from July 1, 1994 through June 30, 1995, and that he performed all necessary obligations on his part to fully perform the contract, but defendant refused him proper payment for services rendered.

Ultimately, the case was tried to the court, which issued a decision, including findings of fact and conclusions of law. The facts presented to the trial court were largely undisputed. On September 7, 1994, plaintiff signed a letter of agreement dated August 10, 1994, employing him as special counsel to the Attorney General for the state of Ohio from July 1, 1994 through June 30, 1995. According to the agreement, plaintiff was to be paid from the funds collected:

"You will be compensated for your services through payment of a fee from funds collected by you in an amount approved by the Attorney General, pursuant to § 109.08, Ohio Revised Code, upon the referral of a specific claim. The total

amount paid, pursuant to this Agreement, shall be an amount determined by the Attorney General, but in no event, shall exceed one third of the funds collected."

As he and defendant agreed, plaintiff was to receive one-third of all funds collected on a case up to $30,000, and ten percent of those funds over and above $30,000.

Prior to expiration of the contract, plaintiff, who had served as special counsel to defendant since 1979, received a letter from defendant advising that his special counsel contract would not be renewed. At the time his contract expired, plaintiff had three hundred six open and active bankruptcy cases that he was handling for defendant. Plaintiff testified that of those, he had completed all work on one hundred twenty-six of the cases ("contested cases"). After plaintiff's contract with defendant expired, defendant received funds collected on those contested cases, but plaintiff received no fees after June 30, 1995.

Prior to June 30, 1995, plaintiff had received $47,870.94 in legal fees for his work on the contested cases. According to defendant's expert, that sum represents a fair, adequate, and reasonable compensation for the work plaintiff performed.

The trial court concluded that under the express terms of plaintiff's agreement with defendant, his employment began July 1, 1994 and ended June 30, 1995. Moreover, the court found that because plaintiff's appointment as special counsel to defendant concluded on June 30, 1995, so did his right to be compensated. In further support of its decision, the trial court noted that because plaintiff's agreement with defendant states that he is to be compensated for services through payment of a fee from funds "collected by you," plaintiff is not entitled to funds collected after June 30, 1995, as he did not personally collect them. Finding no provision in plaintiff's contract that would allow him to receive any more than the $47,870.94 already paid him in legal fees for services rendered on the contested cases, the court entered judgment for defendant.

█ Plaintiff appeals, contending that the trial court erred in finding that he is not entitled to be compensated out of the fees collected after June 30, 1995, on the contested cases for which he had performed all the necessary work prior to June 30, 1995.

Initially, both parties discuss at some length *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448, and *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 629 N.E.2d 431, raising various arguments either as primary or alternative support for their respective positions. As the trial court properly concluded, however, neither case resolves the issue before us. Plaintiff was not discharged during the course of his contract with defendant. Rather, unlike past years, his contract simply was

not renewed, meaning that effective July 1, 1995, plaintiff no longer served as special counsel. Because plaintiff was not discharged mid-term, but instead completed all work on the contested cases, the notions of *quantum meruit* explained in *Fox* and in *Reid, Johnson* do not apply to the facts of this case.

Rather, because plaintiff had a contract that neither party terminated prior to its expiration, we look to the terms of the contract in determining the compensation to which plaintiff is entitled. In that regard, defendant asserts that the contract terms limit plaintiff to those fees arising from funds collected by him during the contract term. Because plaintiff's contract expired June 30, 1995, defendant contends that plaintiff no longer "collected" fees after that date. The contract, however, does not so specify. It states that plaintiff "will be compensated for [his] services through payment of a fee from funds collected by [him]"; it does not provide that plaintiff will be compensated for his services from funds he collected during the contract term.

Moreover, although the contract specifies that the fees will be paid from funds "collected by you," the trial court ascribed an unduly narrow interpretation to that phrase. According to the evidence, prior to the expiration of plaintiff's contract with defendant, plaintiff was paid a fee for funds collected, whether the funds were paid directly to plaintiff, to defendant's office, or to the department to whom the funds were owed; regardless of where the funds were directed, the funds were deemed collected by plaintiff. Similarly, the fact that plaintiff did not personally handle the collected funds at issue does not mean they were not collected by him. He testified that he performed all of the work necessary to procure the funds, and thus "collected them" under the terms of the contract. Under his agreement with defendant, he is entitled to be paid for his services rendered during the contract period from funds he collected.

In the final analysis, the literal terms of the contract specify that plaintiff is to be compensated for his services, which, of course, are rendered only during the contract term. To the extent that plaintiff, during the contract term, rendered all services necessary to generate the collected funds on the contested cases, plaintiff has "collected" the funds in each of those cases, even if the payment schedule set up in each case did not require payment until after June 30, 1995. According to his agreement with defendant, under those circumstances plaintiff is to be paid fees out of the funds collected.

As the trial court properly noted, the intent of the parties to a written contract is presumed to reside in the language employed in the agreement. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Common words used in the contract are given their plain and ordinary meaning unless a manifest absurdity results. *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501–502.

Here, under the terms of the contract, if the trial court finds that plaintiff performed all necessary work on the contested cases, then plaintiff is entitled to be compensated for services rendered on those cases, as his services resulted in collection of funds from which he is entitled to the agreed percentages.

Because the trial court's decision improperly applied the contract terms to the evidence, plaintiff's single assignment of error is sustained, the judgment of the trial court is reversed, and this cause is remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

TYACK, P.J., concurs.

DESHLER, J., dissents.

DESHLER, Judge, dissenting.

Being unable to agree with the majority, I respectfully dissent.

My basic disagreement with the majority arises from its conclusion that the trial court improperly applied the contract terms to the evidence. My view of the language of the contract governing the payment of fees to appellant is somewhat more restrictive than advanced by the majority. While I agree that the contract does not expressly address the issue of entitlement to contingent fees for money received by the state after appellant's contract ended his employment, appellant's services on the cases at issue were recognized by expert testimony that appellant was entitled to $47,870.94 in fees for his work on these cases. Thus, the state is not being unjustly enriched by efforts of appellant whereby it would pay nothing for appellant's services. Second, the contract between the parties calls for the attorney to be paid from money collected by him. It is clear from the record that money received after June 30, 1995, was not collected by appellant.

In essence, appellant is being paid a reasonable fee for work performed during his contract and prior to its termination. The contingent fee portion of appellant's contract does not permit payment of fees after the appellant's contract with the state ended and before he had collected money that would otherwise be subject to the contingent fee provision of the contract.

Accordingly, I cannot conclude that the trial court erred in its findings and conclusions in favor of the state. I would therefore affirm the judgment of the trial court.