**SHAPIRO, Appellant,**

**v.**

**ATTORNEY GENERAL OF OHIO, Appellee.**

[Cite as *Shapiro v. Ohio Atty. Gen.* (1999), 132 Ohio App.3d 711.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–1158.

Decided Sept. 16, 1999.

*Goldman, Rubin & Shapiro* and *Joel Shapiro,* for appellant.

*Betty D. Montgomery,* Attorney General, and *William C. Becker,* Assistant Attorney General, for appellee.

BOWMAN, Judge.

Appellant, Joel Shapiro, appeals from a judgment of the Ohio Court of Claims that found he was not entitled to recover attorney fees for services rendered as special counsel to the state of Ohio pursuant to a contract with appellee, the Attorney General of the state of Ohio.

Appellant sets forth the following assignments of error:

"1. The Judgment of the Trial Court in the within cause as reflected in the Trial Court's Decision and Judgment Entry filed August 11, 1998, is against the manifest weight of the evidence.

"2. The Trial Court erred by failing to apply Ohio contract law regarding Attorney's fees based upon contingent fee contracts to the facts of the instant case."

This is the second time this matter has been before this court. Beginning in 1979, appellant entered into a series of contracts with appellee to serve as special counsel for purposes of collecting debts on behalf of various state agencies. In 1992, appellant's duties changed somewhat and he was to pursue bankruptcy claims in the United States District Court in Dayton, on behalf of the Ohio Department of Taxation and the Ohio Bureau of Workers' Compensation.

In 1994, appellant again entered into a contract with then Attorney General Lee Fisher, to serve as special counsel for the period July 1, 1994 through June 30, 1995. That contract provided in part:

"You will be compensated for your services through payment of a fee from funds collected by you in an amount approved by the Attorney General, pursuant to 109.08, Ohio Revised Code, upon the referral of a specific claim. The total amount paid, pursuant to this Agreement, shall be an amount determined by the Attorney General, but in no event, shall exceed one third of the funds collected."

The parties do not dispute that appellant was to be paid one-third of the funds collected, up to $30,000 in an individual case and ten percent of the funds collected above $30,000.

In June 1995, appellant was notified that his contract as special counsel would not be renewed. At that time, appellant had over three hundred bankruptcy cases he was handling on behalf of appellee, and appellant testified work was complete on one hundred twenty-six cases ("the contested cases"), except for payment of the state's claims. Appellant was paid fees based on amounts collected in the contested cases through June 30, 1995, in the amount of $47,870.94. Appellee contended this was fair, adequate, and reasonable compensation.

Appellant filed suit in the Ohio Court of Claims for fees based on payments received by the state after June 30, 1995, and the trial court concluded that, as appellant's appointment of special counsel had ended June 30, 1995, he could not collect fees based on any funds received by the state from pending bankruptcy cases after that date and, thus, was not entitled to be paid. On appeal, this court disagreed and held, in *Shapiro v. Ohio Atty. Gen.* (1997), 124 Ohio App.3d 476, 479, 706 N.E.2d 795, 797:

"In the final analysis, the literal terms of the contract specify that plaintiff is to be compensated for his services which, of course, are rendered only during the contract term. To the extent plaintiff, during the contract term, rendered all services necessary to generate the collected funds on the contested cases, plaintiff has 'collected' the funds in each of those cases, even if the payment schedule set up in each case did not require payment until after June 30, 1995. According to his agreement with defendant, under those circumstances plaintiff is to be paid fees out of the funds collected."

This court remanded the matter to the trial court to determine whether appellant had done all the necessary work in the contested cases so as to be entitled to compensation for those services, even though payment was made after June 30, 1995. The parties stipulated that, rather than having a new trial, the case would be submitted based on the evidence from the first trial. The trial court found that appellant failed to prove he performed the required services that resulted in collections made after the contract expired and for which he was not fully compensated. The trial court did not specify what services appellant had failed to perform.

 Before addressing appellant's assignments of error, we must first determine whether this matter is properly before the court. Appellee contends that, inasmuch as this court's earlier decision in *Shapiro* found that the decision of the trial court was against the manifest weight of the evidence, appellant's appeal in this matter is barred by App.R. 12(C). App.R. 12(C) provides:

"(C) Judgment in civil action or proceeding when sole prejudicial error found is that judgment of trial court is against the manifest weight of the evidence. In any civil action or proceeding which was tried to the trial court without the intervention of a jury, and when upon appeal a majority of the judges hearing the appeal find that the judgment or final order rendered by the trial court is against the manifest weight of the evidence and do not find any other prejudicial error of the trial court in any of the particulars assigned and argued in the appellant's brief, and do not find that the appellee is entitled to judgment or final order as a matter of law, the court of appeals shall reverse the judgment or final order of the trial court and either weigh the evidence in the record and render the judgment or final order that the trial court should have rendered on that evidence or remand the case to the trial court for further proceedings; provided further that a judgment shall be reversed only once on the manifest weight of the evidence."

In his first appeal, appellant raised the following assignment of error:

"The judgment of the trial court in the within cause is against the manifest weight of the evidence as reflected in the trial court's decision and judgment entry filed April 14, 1997."

■ Although this court sustained the assignment of error that was couched in terms of the manifest weight of the evidence, the holding of this court was on an issue of law. The issue presented in the first appeal was whether the trial court had properly interpreted the contract between the parties, and the interpretation of a contract is a question of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. This court remanded the matter to the trial court to determine, for the first time, whether appellant performed all necessary work on the contested cases and, if he did, this court concluded he would be entitled to his fees. Appellee's motion to dismiss was overruled.

■ In his first assignment of error, appellant argues that the trial court's conclusions are against the manifest weight of the evidence. In *C.E. Morris v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, the court held:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

■ Appellant testified that he did everything necessary to effectuate collections in various bankruptcies filed in Dayton, in which the Department of Taxation or the Bureau of Workers' Compensation had a claim. Appellant reviewed each case assigned to him by the Attorney General's office to determine the priority status of each claim, reviewed court files to be certain proofs of claims were filed and were filed in the proper amount, filed objections where required to proposed plans in Chapter 11 and Chapter 13 bankruptcy proceedings, attended meetings of creditors, contacted the Attorney General's office to obtain information, and forwarded payments as received. Appellant testified that, as the result of his efforts, $256,153.25 was collected on behalf of the state. Therefore, appellant argues he is entitled to $85,776.89 in fees for work done on the contested cases.

After appellant's contract was not renewed, Nora Jones, the Director of Litigation and Assistant Chief of the Revenue Recovery Section for the Attorney General, and/or her assistant examined the files in the contested cases. Jones testified that the cases that had previously been assigned to appellant were either reassigned to Assistant Attorneys General or to other special counsel. With the exception of the bankruptcy filed by Byers' Acquisition Group, Inc., discussed in more detail below, no evidence was presented that any subsequently assigned

attorney had to do any work on any of the contested cases to effectuate collection in the bankruptcy proceedings. Although Jones was occasionally critical of the manner in which appellant maintained his files and did his record keeping, no evidence was presented that any further work needed to be done in the contested cases.

In the Byers' Acquisition bankruptcy, counsel for the bankrupt had sent a letter to appellant on July 10, 1995, after the expiration of appellant's contract as special counsel, to propose a resolution to a disputed claim for past due taxes. Jones testified that, after appellant returned the Byers' Acquisition file to the Attorney General, she, along with other staff members, special counsel and Byers' counsel negotiated an agreed order. Thus, with the exception of the Byers' Acquisition bankruptcy, no evidence was presented that any work, other than that done by appellant, needed to be done in the contested cases in order to effect collection of the claims. Therefore, appellant's first assignment of error is sustained.

In his second assignment of error, appellant argues he is entitled to recover on the basis of *quantum meruit.* Inasmuch as we have determined appellant is entitled to recover his fees pursuant to his contract with appellee, appellant's second assignment of error is overruled.

Appellant's first assignment of error is sustained, appellant's second assignment of error is overruled, and this matter is remanded to the Ohio Court of Claims with instructions to enter judgment in favor of appellant in the amount of $85,776.89, less the amount due for the Byers' Acquisition Group, Inc., bankruptcy.

*Judgment reversed and remanded with instructions.*

LAZARUS, P.J., and PETREE, J., concur.